**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

EDDIE ALBERTO LUGO CORTES,

                          Plaintiff,            7:16-CV-1012
                                            (CFH)

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                             OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    PETER L. WALTON, ESQ.
Attorneys for Plaintiff
407 Sherman Street
Watertown, New York 13601-9990

U.S. SOCIAL SECURITY ADMIN.                JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

      Currently before the Court, in this Social Security action filed by Eddie Alberto

Lugo Cortes ("Plaintiff") against the Commissioner of Social Security ("Defendant" or

"the Commissioner") pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 10, 11.)  For the reasons set forth below, Plaintiff's motion for judgment on

the pleadings is denied, and Defendant's motion for judgment on the pleadings is

granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.      BACKGROUND

### A.      Facts

Plaintiff, born in 1966, was 46 years old when he filed his application for benefits and 48 years old at issuance of the ALJ's decision. (T. 48-49).[1] Plaintiff is married and has three children. (*Id.* at 51). Plaintiff reported earning his GED, and the ALJ found he did not have past relevant work. (*Id.* at 21, 49). Generally, Plaintiff alleges disability consisting of hepatitis C, liver problems, diabetes, high blood pressure, gout, and mental health issues.

### B.      Procedural History

Plaintiff applied for Supplemental Security Income on February 27, 2013, alleging disability beginning March 1, 2012. Plaintiff's application was initially denied on June 13, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 136). Plaintiff appeared at video hearings before ALJ John P. Ramos on October 2, 2014, and February 2, 2015. (*Id.* at 42-72; 73-92). On March 18, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.* at 19-37.) On July 29, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.)

---

[1] The Administrative Transcript is found at docket number. 7. Citations to the Administrative Transcript will be referenced as "T" The Bates-stamped page numbers within the Administrative Transcript will be referenced, rather than the pagination assigned by the CM/ECF electronic filing system.

## C.    The ALJ's Decision

Generally, in his decision, ALJ John Ramos made the following six findings of

fact and conclusions of law.  (T. 21-37.)  First, the ALJ found that Plaintiff has not

engaged in substantial gainful activity since February 27, 2013.  (*Id.* at 21.)  Second, the

ALJ found that Plaintiff's history of hepatitis C, gout, rheumatoid arthritis; bipolar

disorder; posttraumatic stress disorder ("PTSD"); intermittent explosive disorder; and

personality disorder are severe impairments.  (*Id.* at 21-23.) The ALJ determined that

his diabetes, hypertension, gastroesophageal reflux disease, headaches, and neck and

left trapezius muscle pain are not severe impairments.  (*Id.*)  Third, the ALJ found that

Plaintiff's severe impairments do not meet or medically equal one of the listed

impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (*Id.* at 23-27.)  More

specifically, the ALJ considered Listing 5.05 (chronic liver disease), 12.04 (mood

disorders), 12.06 (anxiety disorders), 12.08 (personality disorders), and 14.09

(inflammatory arthritis).  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual

functional capacity ("RFC") to perform on the exertional side, sedentary as defined in

the Regulations; the mental or skill aspect is that he retains the ability to understand and

follow simple instructions and directions; perform simple tasks with supervision and

independently; maintain attention/concentration for simple tasks; he can regularly attend

to a routine and maintain a schedule; he is limited to simple one- or two-step rote tasks;

he can work in proximity to other co-workers, but should have only occasional brief

interaction with them throughout the workday; he should have no interaction with the

public; and he can handle reasonable levels of simple work-related stress, in that he

can make decisions directly related to the performance of simple work and handle usual

*workplace changes and interactions associated with simple work.* (*Id.* at 27.) Fifth, the

ALJ found that Plaintiff has no past relevant work. (*Id.* at 34.) Finally, the ALJ

determined that Plaintiff is not disabled at Step Five because he retains the ability to

perform jobs that exist in significant numbers in the national economy, including table

worker, document preparer, and addresser. (*Id.* at 36.)


### D. The Parties' Arguments

Plaintiff makes several arguments in support of his motion for judgment on the

pleadings. First, Plaintiff argues that the ALJ erred in failing to find that his bipolar

disorder met Listing 12.04. (Dkt. No. 10, at 8-12 [Pl. Mem. of Law].) Second, Plaintiff

argues that the ALJ failed to properly weigh the opinion evidence. (Dkt. No. 10, at 12-

16 [Pl. Mem. of Law].) Third, plaintiff contends that the ALJ erred in failing to clarify his

conclusion that the marked physical limitations opined by the consultative examiner

corresponded with an ability to perform sedentary work. (Dkt. No. 10, at 10-11 [Pl.

Mem. of Law].) Fourth, Plaintiff argues that the ALJ erred in affording weight to an

assessment from the non-examining State Agency source. (Dkt. No. 10, at 14 [Pl.

Mem. of Law].) Fifth, Plaintiff contends that the ALJ was required to give the treating

physicians' opinions more than little weight under the treating physician rule, and that

the ALJ erred in failing to re-contact the treating physicians before concluding that their

opinions were unsupported by the evidence. (Dkt. No. 10, at 15-16 [Pl. Mem. of Law].)

Sixth, Plaintiff argues that the ALJ failed to fully consider the full range of

Plaintiff's mental health limitations supported by the record, including his inability to read

and write and to speak in public without assistance. (Dkt. No. 10, at 16-19 [Pl. Mem. of

Law].)   Seventh, Plaintiff argues that the ALJ failed to properly determine his RFC in failing to provide a function-by-function analysis of Plaintiff's physical abilities, and in failing to properly explain the extent of his reliance on the consultative examiner's opinion.  (Dkt. No. 10, at 19-21 [Pl. Mem. of Law].)   Eighth, Plaintiff argues that the Step Five finding was unsupported by substantial evidence because the ALJ failed to adopt the extent of limitations set forth in the medical opinions and other evidence. (Dkt. No. 10, at 21-22 [Pl. Mem. of Law].)  Finally, Plaintiff that the ALJ failed to meet his burden at Step Five because he did not cite the regional numbers of the jobs identified by the vocational expert and did not inquire as to the extent to which an inability to read and write English would erode Plaintiff's ability to perform the identified jobs.  (Dkt. No. 10, at 22-23 [Pl. Mem. of Law].)

Defendant makes five main arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal Listing 12.04 because the ALJ properly relied on the opinion of the State Agency psychiatric consultant.  (Dkt. No. 11, at 7-9 [Def. Mem. of Law].)  Second, Defendant argues that the ALJ properly evaluated the opinion evidence from Plaintiff's treating physicians.  (*Id.* at 10-15)  Third, Defendant contends that the ALJ properly considered the full scope of the evidence related to mental health limitations, asserting that Plaintiff's argument is based on a misreading of the RFC assessment and that the overall evidence does not support that Plaintiff was unable to read or write in English.  (*Id.* at at 15-16)  Fourth, Defendant argues that the RFC determination is supported by substantial evidence, asserting that the ALJ did not err in failing to provide a detailed function-by-function assessment of Plaintiff's physical

abilities, particularly as the vocational expert's testimony showed that Plaintiff would not be disabled even if greater, more specific limitations were adopted. (*Id.* at at 17-18). Finally, Defendant asserts that the ALJ's Step Five finding was supported by substantial evidence because the ALJ accounted for all of the supported limitations in the RFC and hypothetical questions, and there was no legal requirement for the ALJ to provide regional numbers for the jobs identified by the vocational expert. (*Id.* at 19)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed

susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Disability Standard

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

> mental ability to do basic work activities. If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work. Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform. Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758

F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S.

20, 24 (2003).


### III.    ANALYSIS

### A.  Listing 12.04

A plaintiff will be found disabled if the individual has an impairment or

combination of impairments that meets or equals one of the Listings, and meets the

duration requirement. 20 C.F.R. § 404.1520(d). The burden is on the plaintiff to

present medical findings that his or her impairments match a Listing or are equal in

severity to a Listing. *Davis v. Astrue,* 6:09-CV-0186 (LEK/GHL), 2010 WL 2545961, at

*3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or

equals *all* of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)

(superseded by statute on other grounds).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  *Id.* Additionally, while an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982).

To meet Listing 12.04, a plaintiff must show that he meets the following criteria:

Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements of both A and B are satisfied, or when the requirements of C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions, or paranoid thinking;

or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either syndrome);

AND

B. Resulting in at least two of the following:

1. Marked restrictions of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, Subpart P, App. 1, § 12.04 (2015).

Plaintiff argues that the evidence shows that his bipolar disorder meets the requirements of Listing 12.04, entitling him to a "presumptive finding of disability without further review." (Dkt. No. 10, at 8-12 [Pl. Mem. of Law].) However, contrary to Plaintiff's assertions, there is substantial evidence to support the ALJ's finding that the record does not contain the requisite medical evidence to show that Plaintiff was medically disabled as a result of his mood disorder. (T. 24-27.) Notably, the majority of the evidence Plaintiff cites to in support of his argument is his own subjective reports of symptoms, reports which are not substantiated by the actual medical treatment evidence. (Pl. Mem. of Law at 8-11) For example, although Plaintiff reported hallucinations both the hearing and on one occasion to Dr. Littell, as well extreme anger issues and paranoid thoughts related to being around people, with the exception of this one medical report from Dr. Littell noting Plaintiff's report, evidence of hallucinations and paranoia are not consistent throughout the record and are otherwise unsubstantiated by objective medical evidence. (*Id.* at 59, 66-67, 438.) Despite alleging that he could not even be around his family due to anger and irritability, no medical source observed any issues in Plaintiff's attitude or ability to act appropriately during examinations; in fact, some sources noted that he was cooperative. (*See, e.g.*, *Id.* at 321-22, 324, 355, 364-65, 385, 391, 410.) Additionally, it does not appear that Plaintiff was in treatment of any kind for his mental impairments until mid-2013, and he did not report or display much in

the way of mental health symptoms or limitations -- other than at the consultative examination with Dennis Noia, Ph.D. -- until he began treatment with Dr. Littell.

Additionally, although Dr. Littell noted that Plaintiff's wife spoke for him at his mental health appointments, there is little, if any, indication in any other treatment notes or consultative examinations indicating that Plaintiff was unable to speak to his providers by himself. Further, it is noted that Plaintiff was able to speak for himself at the hearing. (T. at 42-92). Indeed, the only indication regarding understanding or communicating related to a comment by Plaintiff's counsel that Plaintiff was able to speak English "pretty well, but that things sometimes "get[] lost in translation." (*Id.* at 44). The inconsistencies between Plaintiff's presentation at examinations with Dr. Littell and at the other examinations and administrative proceedings calls into question whether Plaintiff's mental impairments imposed the extent of limitations he alleged. Dr. Littell's treatment notes provide little useful evidence for assessing the level of Plaintiff's medical disability related to his mental impairments because Dr. Littell was unable record objective mental status findings due to Plaintiff's refusal or alleged inability to communicate for himself. (*Id.* at 379, 432-33, 437, 439.) However, even Plaintiff's wife reported to Dr. Littell at some of these examinations that Plaintiff's mood as well as his concentration, attention, and speech were fine. (*See e.g.*, *id.* at 433, 437, 439.) Lastly, Dr. Noia's observations on the May 2013 consultative examination do not support Plaintiff's assertions that he meets Listing 12.04. Dr. Noia observed that Plaintiff was cooperative; had moderately adequate social skills, manner of relating and overall presentation; was appropriately dressed; had good hygiene; displayed normal gait and normal posture; had restless motor behavior; had appropriate eye contact, adequate

speech, and coherent thought process; had a somewhat hyperactive mood and somewhat manic affect; showed intact attention and concentration; had mildly impaired memory; and was estimated to have a low average intellectual functioning. (*Id.* at 321-22.)  Although Plaintiff surely has some symptoms and limitations as a result of his mental impairments, the medical evidence does not indicate that they were at the level of meeting or equaling a listed impairment.

Lastly, the ALJ's listing finding is supported by his explicit reliance on the opinion of State Agency psychiatric consultant H. Tzetzo, who found no more than moderate limitations in any area considered in the paragraph B criteria of the mental Listings.  (T. 27.)  Although Plaintiff argues that Dr. Tzetzo was not a medical source due to the omission of his credentials in the record, this argument disregards the specialty designation that is included in the opinion after Dr. Tzetzo's name.  As Defendant notes, the Social Security Administration's internal claims-processing procedure manual the Program Operations Manual System ("POMS") indicates a list of "Social Security disability programs medical specialty codes" for psychiatric and psychological consultants, as well as other medical consultants, to be included on disability determination forms.  (Dkt. No. 11, at 8 n.3 [Def. Mem. of Law].)  *See also* POMS DI 24501.004(B).  The disability form containing Dr. Tzetzo's opinion from the initial disability determination indicates a code of "37" after Dr. Tzetzo's name, which corresponds with a specialty in psychiatry.  (T. at 99.)  *See also* POMS DI 24501.004(B).  Consequently, Plaintiff's arguments that Dr. Tzetzo was a Single Decision Maker rather than a psychiatric consultant is not consistent with the evidence.

The ALJ was entitled to rely on this opinion where, as here, it was consistent with the evidence in the record.

Although this Court has noted that "'the opinion of a non-examining [consultant], without more, [is] insufficient to constitute the requisite contrary substantial evidence'" to support an ALJ's finding which are contrary to a treating physician's opinion, the ALJ in relied on more than just Dr. Tzetzo's opinion to support his findings. *See Henry v. Astrue*, 32 F. Supp. 3d 170, 188 (N.D.N.Y. 2012) (alteration in original) (citation omitted). The decision shows that, in addition to Dr. Tzetzo's opinion, the ALJ also relied in part on Dr. Noia's examination and opinion, as well as the other objective mental health treatment evidence. (T. 28-30, 32-33.) Thus, it is evident from his decision that the ALJ relied on more than just Dr. Tzetzo's non-examining opinion when making determinations regarding Plaintiff's mental functioning. *See Trombley v. Colvin*, No. 8:15-CV-0567, 2016 WL 5394723, at *9 (N.D.N.Y. Sept. 27, 2016) (finding that the ALJ was entitled to rely on the non-examining State Agency consultant's opinion for a mild degree of limitation in activities of daily living where that finding was well-supported by the other evidence); *McEaney v. Comm'r of Soc. Sec.*, 536 F. Supp. 2d 252, 255-56 (N.D.N.Y. 2008) (noting that "the evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence" where they are in turn supported by the evidence in the record, and that they should be given weight "only insofar as the record supports") (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); SSR 96-9p, 1996 WL 374180, at *3 (July 2, 1996)). For all of the above reasons, the ALJ's determination regarding Listing 12.04 is supported by substantial evidence, and remand is not warranted on this basis.

## B. Treating Physicians' Opinions

In terms of weighing opinion evidence, the Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c): "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) *adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical

sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 416.927(c)(1)-(6).

In a letter, treating gastroenterologist Dr. Triantafillou recommended that Plaintiff not work while receiving treatment for hepatitis C due to fatigue, weakness, and short attention span. (T. 319.) In a treatment note from June 11, 2013, Marylene Duah, M.D., noted that Plaintiff was treated for hepatitis C with a 32-week course of Pegasys and ribavirin, with treatment ending in January 2013. (*Id.* at 337.) When affording little weight to Dr. Triantafillou's opinion, the ALJ noted that Plaintiff had not received any further treatment for hepatitis C after January 2013 and indicated that Dr. Triantafillou's opinion, therefore, did not indicate that Plaintiff was precluded from performing work during the period at issue, which began with Plaintiff's filing date of February 27, 2013. (*Id.* at 32.) The ALJ's rejection of this opinion is supported by substantial evidence because the ALJ provided good reasons for that rejection. Dr. Triantafillou's own words indicate that his statement was not meant to indicate that Plaintiff was unable to work due to his impairments; rather, that he should not work while receiving the prescribed course of treatment for hepatitis C. Because Plaintiff finished that treatment prior to the application filing date, as the ALJ notes, Dr. Triantafillou's opinion does not address Plaintiff's disability during the actual period of time for which Plaintiff is eligible to receive disability benefits and does not suggest Plaintiff was unable to work for any of the time after when his hepatitis treatment was completed.

On October 14, 2013, Dr. Littell provided a report wherein he noted that Plaintiff was able to perform his activities of daily living independently and access transportation,

but was not able to advocate for himself, schedule his own appointments, or attend appointments independently. (T. 351-52.) Dr. Littell further opined that Plaintiff was unable to participate in work activities and was totally and permanently disabled. (*Id.*) On February 10, 2014, Dr. Littell assessed that Plaintiff had marked limitations in his abilities to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.* at 381.) Dr. Littell also opined that Plaintiff had moderate limitations in his abilities to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions; and mild limitations in his abilities to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions. (*Id.* at 380.) In a letter dated September 25, 2014, Dr. Littell indicated that he saw Plaintiff for medication management on a monthly basis since June 2013 and noted that Plaintiff's wife reported he was still irritable, easily agitated and somewhat depressed, but his anger outbursts had decreased; and that he continued to have sleep difficulties with violent nightmares and could not attend group sessions due to his anger outbursts. (*Id.* at 431.) Dr. Littell opined that Plaintiff was unable to participate in any type of employment at that time and he did not foresee Plaintiff ever assuming gainful employment. (*Id.*) Dr. Littell also provided a medical source statement dated September 29, 2014, which indicated the same limitations as the February 2014 opinion. (*Id.* at 441-42.)

The ALJ afforded "less weight" to Dr. Littell's opinions, finding that the assessments of disability and marked limitations were not supported by Dr. Littell's own treatment notes, were based primarily on Plaintiff's and his wife's subjective reports due

to Plaintiff's refusal to speak at mental health treatment sessions, and were inconsistent with the opinions of Dr. Tzetzo and Dr. Noia. (T. 33-34.) The ALJ also noted that Dr. Littell's statements that Plaintiff was disabled or unable to work were issues reserved to the Commissioner. (*Id.*)

The ALJ's reasons for declining to accord controlling weight or any greater weight to Dr. Littell's opinions are good reasons supported by substantial evidence. As the ALJ noted, Dr. Littell's notes do not provide corroboration for the marked limitations in social functioning and responding to changes. Dr. Littell's placement of question marks for many of the areas relevant to the mental status examinations indicate that he was unable to properly assess Plaintiff's mental functioning due to Plaintiff's refusal to speak during these session, and there is, therefore, support for the ALJ's assertion that Dr. Littell relied on the subjective reports of Plaintiff's wife rather than actual medical findings when rendering his opinions. Notably, Plaintiff's wife often failed to report serious symptoms consistent with disabling limitations on these exams. (T. 379, 432-33, 437, 439.) As recognized above, there was little indication that Plaintiff was unable to communicate with any of his providers other than Dr. Littell, which calls Plaintiff's statements regarding severity of his mental limitations into question. As also noted previously, there is no objective evidence to support Plaintiff's reports that he had pervasive anger issues that severely compromised even basic social functioning, as he was primarily noted to be cooperative on examinations without any notations of displayed anger or inappropriate behavior. (*See, e.g.*, T. 321-22, 324, 355, 364-65, 385, 391, 410.) Nor are Dr. Littell's conclusions regarding social functioning consistent with other medical evidence of record, specifically Dr. Noia's examination and opinion,

which indicated that Plaintiff was able to interact and relate moderately well with others. (*Id.* at 321-23.)  Contrary to Plaintiff's vague assertions, the ALJ's discussion of Dr. Littell's opinions and the rest of the evidence indicates that the ALJ properly considered the required factors outlined in 20 C.F.R. § 416.927(c).  Because the ALJ correctly noted that Dr. Littell's opinions were inconsistent with both his own treatment notes and the other evidence in the record, the ALJ has provided good reasons for affording less weight to these opinions.[2]  Thus, this determination is supported by substantial evidence.

Plaintiff also argues that the ALJ had a duty to re-contact Plaintiff's treating physicians, citing multiple out-of-district cases. (Pl. Mem. of Law at 15-16)  However, these cases are inapposite to Plaintiff's claim.  Plaintiff does not allege that there was a specific and material gap in the record that the ALJ was required to fill, or show how the opinions of Dr. Littell or Dr. Triantafillou were somehow incomplete or unclear such that the ALJ would have been required to re-contact them in order to be able to make a determination as to whether Plaintiff was disabled.  *See, e.g., Teekasingh v. Colvin*, No. 3:13-CV-01375 GTS, 2015 WL 5919946, at *6 (N.D.N.Y. Oct. 9, 2015) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[R]eviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision.").  Rather, the ALJ appropriately weighed all the evidence in this

---

[2]     Regarding Dr. Littell's statements that Plaintiff was unable to work, the ALJ was not required to afford any deference to such statements -- particularly where, as here, they were not supported by the evidence -- because the issue of whether a claimant is disabled is an issue reserved to the Commissioner.  *Mortise v. Astrue*, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) ("It was proper to give little weight to [Dr. Russell's] opinion, which concerned issues reserved to the Commissioner," where the opinion in question consisted of statements that the plaintiff was severely disabled and not competitively unemployable) (citing 20 C.F.R. § 416. 927(d)(1)).

case and crafted an RFC assessment based on the weight of that evidence. *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (summary order); *Bliss v. Colvin*, No. 3:13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *White v. Colvin*, No. 6:13-CV-0084, 2014 WL 1311993, at *7 (N.D.N.Y. Mar. 31, 2014) ("[I]t is the ALJ's job to properly evaluate the evidence and reconcile any apparent inconsistencies."); *Petell v. Comm'r of Soc. Sec.*, No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (noting that the ALJ is "free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions"). This Court does not see any way in which the record was under-developed or in which the opinions of the treating physicians were unclear such that the ALJ would have needed to re-contact these sources for additional information or clarification. Plaintiff's argument therefore fails.

Plaintiff also argues that the ALJ failed to "clarify the extent of the 'marked limitations' [opined by consultative examiner Dr. Magurno] even though he purported to give them weight." (Pl. Mem. of Law at 13-14, 20) Plaintiff contends that Dr. Magurno's opinion that he had marked restrictions in lifting and carrying suggests that he would not

be capable of performing the demands of sedentary work. (*Id.*) The ALJ stated that he found the lifting, carrying, walking, and standing limitations opined by Dr. Magurno were supported in that they were "not inconsistent with an ability on the part of the claimant to perform sedentary exertional work." (T. 32.) It is clear that the ALJ interpreted the marked limitation for lifting and carrying as being consistent with an ability to lift and carry up to ten pounds at one time. *See* SSR 83-10, 1983 WL 31251, at *5 (1983) (outlining the exertional requirements of sedentary work). The question therefore becomes whether the ALJ's interpretation of the lifting and carrying limitation was reasonable.

Plaintiff has not pointed to any legal authority indicating that a marked restriction in lifting and carrying automatically requires a finding that the claimant cannot perform the requirements of sedentary work, which requires lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Additionally, the ALJ is only required to account for limitations supported by the evidence. The rest of the physical treatment evidence is devoid of any indication that Plaintiff lacked the capacity to lift and carry up to 10 pounds or was otherwise unable to perform a full range of sedentary work -- to the contrary, many of Plaintiff's physical examinations were essentially normal. (T. 315-16, 338, 343, 355, 364-65, 384-85, 391, 410, 415-18, 419-21, 424-36.) Based on the treatment evidence as a whole, including Dr. Magurno's own examination -- all of which the ALJ discussed in detail in the written decision -- this Court cannot conclude that the ALJ's interpretation of Dr. Magurno's lifting and carrying limitation and overall conclusion that Plaintiff could perform sedentary work was unreasonable. *See Hart v.*

*Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent [the doctor's] opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."); *Campbell v. Astrue*, 713 F. Supp. 2d 129, 132 (N.D.N.Y. 2010) ("Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing *Rutherford*, 65 F.2d at 62); *Perkins v. Astrue*, 32 F. Supp. 3d 334, 337 (N.D.N.Y. 2012); *Swan v. Comm'r of Soc. Sec.*, No. 7:14-CV-0773, 2015 WL 5512686, at *3 (N.D.N.Y. Sept. 15, 2015). The ALJ's thorough discussion of the physical treatment evidence and his finding that Plaintiff could perform sedentary work provides insight into to how the ALJ interpreted the extent of the marked limitation in lifting and carrying. Plaintiff has not provided a persuasive reason or citation to contrary evidence showing why the ALJ should have interpreted the marked limitation as an inability to meet the lifting and carrying requirements of sedentary work.

Lastly, Plaintiff argues that the ALJ erred in relying on opinions from the non-treating sources over the treating sources. (Pl. Mem. of Law at 14-16) However, "[a]n ALJ 'is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants.'" *Dority v. Comm'r of Soc. Sec.*, No. 7:14-CV-0285, 2015 WL 5919947, at *7 (N.D.N.Y. Oct. 9, 2015) (quoting *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978, at *4 (N.D.N.Y. June 7, 2010)). The ALJ provided good reasons for rejecting the treating sources' opinions, and his reliance on the opinions of the consultative examiners and State Agency consultant Dr. Tzetzo is

supported by substantial evidence.   For all these reasons, the weight the ALJ afforded

to the opinion evidence is supported by substantial evidence and consistent with

applicable legal standards, and remand is not required on this basis.


### C.  Mental Health Treatment Evidence

An ALJ is legally entitled to resolve conflicts in the evidence; however, she

"cannot 'cherry pick' only the evidence from medical sources that support a particular

conclusion and ignore contrary evidence."  *Walsh v. Colvin*, No. 1:13-CV-0603, 2014

WL 4966142, at *9 (N.D.N.Y. Sept. 30, 2014) (citing *Royal v. Astrue*, No. 5:11-CV-0456,

2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012)); *see also Alsheikhmohammed v.*

*Colvin*, No. 6:14-CV-0461, 2015 WL 4041736, at *6 (N.D.N.Y. July 1, 2015) (citing

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d

464, 469 (2d Cir. 1982).   The ALJ "cannot ignore evidence supporting Plaintiff's claim

while at the same time accepting evidence that supports his decision," rather, she "must

consider all evidence in the record."  *Ryan v. Astrue*, 650 F. Supp. 2d 207, 216

(N.D.N.Y. 2009) (quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y.

2004); *Armstead ex. rel. Villanueva v. Astrue*, No. 1:04-CV-0503, 2008 WL 4517813, at

*18 (N.D.N.Y., Sept. 30, 2008)).  However, "'an ALJ is not required to discuss in depth

every piece of evidence contained in the record, so long as the evidence of record

permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v. Comm'r of*

*Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015)

(quoting *LaRock ex. rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7

(N.D.N.Y. Apr. 29, 2011)).

Plaintiff argues that the ALJ erred in failing to properly assess his "inability to read and write English" or "routinely speak in public without the help of his wife." (Dkt. No. 10, at 16-19 [Pl. Mem. of Law].)  As discussed, there is little evidence to support a finding that Plaintiff would be unable to independently speak in a work setting on a routine basis because, although he did not speak during his sessions with Dr. Littell, he was able to give his own testimony at the hearing speak with, and provide information to, other providers throughout the relevant period.  Consequently, there was substantial evidence to support the ALJ's choice to reject Plaintiff's allegations that he was unable to routinely speak with others due to his mental impairments.

In terms of Plaintiff's reported inability to read and write in English, the record does not clearly establish that Plaintiff is illiterate and much of the evidence surrounding his reading and writing abilities conflicts.  Plaintiff reported that he obtained his GED, but there is no indication whether he was tested in English or Spanish.  (T. 49.)  On multiple occasions, Plaintiff reported that he reads the Bible on a daily basis and that he was able to follow written instructions, though, the Court notes that he did not specify whether he read in English or Spanish.  (*Id.* at 248, 251, 322, 325.)  Plaintiff reported he had lost jobs in the past due to his hepatitis C or difficulty with anger or getting along with supervisors, not due to any speaking, writing, or reading difficulties.  (*Id.* at 53-58.) Additionally, contrary to Plaintiff's hearing testimony wherein he claimed illiteracy, he reported in a disability form submitted to the Agency that he not only could speak and understand English, but could also read and understand English and write more than his name in English.  (*Id.* at 237.)  This document also indicates that Plaintiff himself completed this report, which suggests he was able to read the form (which was in

English) and write appropriate answers to the questions. (*Id.* at 238.) The ability to complete such a form in English on his own, in conjunction with his answers to the relevant questions regarding his abilities to read, write, and communicate in English, meet the low threshold for establishing literacy pursuant to the regulations. *See* 20 C.F.R. § 416.964(b)(1) (noting that "[w]e consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name," as well as that "[g]enerally, an illiterate person has had little or no formal schooling").

Plaintiff has not provided evidence that he was unable to read and write in English such that the ALJ would have been required to include such a limitation in either the RFC assessment or the hypothetical questions to the vocational expert, or to apply a different Medical-Vocational Rule at Step Five. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("As a general matter, '[t]he claimant bears the burden of proving that she suffers from a disability.'") (quoting *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009) (summary order)). Regardless, the ALJ limited Plaintiff to simple work and instructions. T at 27. The ALJ reasonably reconciled the conflicting evidence in this case and his determination that Plaintiff is not illiterate as defined in the regulations is supported by substantial evidence. *See Bliss*, 2015 WL 457643, at *7 ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell*, 2014 WL 1123477, at *10 ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Hart*, 32 F. Supp. 3d at 235 ("To the extent [the doctor's] opinion is capable of more than one reasonable interpretation,

this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette*, 901 F. Supp. 2d at 333 ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Plaintiff again essentially requests that this Court find that the ALJ erred in declining to accept Plaintiff's subjective reports without any substantiating objective evidence supporting them. However, because the ALJ specifically found Plaintiff's allegations were not wholly credible for multiple reasons, this Court declines that invitation. *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012) ("'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'") (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).

Plaintiff also argues that the ALJ erred by failing to acknowledge and evaluate his psychiatric symptoms. (Pl. Mem. of Law at 16-17) However, nearly every mental health symptom that Plaintiff cites are based on his own subjective reports, which, as noted previously, are largely unsubstantiated by the medical treatment evidence. Additionally, the ALJ found that Plaintiff's subjective allegations were not entirely credible -- a finding that Plaintiff does not directly challenge – thus, the ALJ's failure to accept these unsupported subjective reports is fully consistent with that credibility finding. (T. 30-31.)

The ALJ discussed Plaintiff's subjective reports and his detailed discussion of the evidence does not raise any suspicion that the ALJ ignored evidence. *Coleman*, 2015 WL 9685548, at *5 (""[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.""). For all these reasons, the ALJ did not fail to assess all the evidence related to Plaintiff's mental impairments, and remand is not required on this basis.

### D. Function-By-Function Assessment and RFC Assessment

Plaintiff argues that, pursuant to SSR 96-8p, the ALJ was required to provide a detailed function-by-function assessment of the exertional abilities related to sedentary work when formulating the RFC, and that his failure to do so in this case was reversible error. (Pl. Mem. of Law at 20-21) However, the Second Circuit has found that the failure to provide a function-by-function analysis is not a *per se* ground for remand, noting that "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, [] remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 176-77 (2d Cir. 2013) (collecting cases from other circuit courts that have declined to adopt a *per se* rule). The Second Circuit did note that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 177 (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

This Court concludes that the ALJ's omission of a function-by-function analysis related to Plaintiff's physical functioning does not merit remand under the circumstances of this case. Most notably, there is no evidence indicating that physical limitations existed that were not encompassed within the overall category of sedentary work, which, by definition, indicates "lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools," and an ability to stand or walk occasionally (approximately no more than two hours in an eight-hour workday) and sit approximately six hours in an eight-hour workday. 20 C.F.R. § 416.967(a); SSR 83-10, 1983 WL 31251, at *5. As noted, Plaintiff's treatment notes show little objective findings suggesting limitations from his physical impairments. An exercise stress test September 23, 2013 indicated that Plaintiff had a "very good exercise tolerance" and was anticipated to be at low risk for a cardiac event. (T. 394.) He was not noted to have any signs or symptoms that suggest limitations in his abilities to sit, stand, walk, lift, carry, push, or pull other than one instance of lumbar back pain in October 2012, which was prior to the relevant period. (T. 311, 315-16, 338, 343, 355, 364-65, 385, 391, 403, 415-21, 424-26, 436.)

Plaintiff also re-iterates his argument that Dr. Magurno's marked limitation for lifting, carrying, and neck extension were inconsistent with the performance of sedentary work. (Pl. Mem. of Law at 20) However, as noted previously, Plaintiff does not cite to any authority to support his assumption that a marked restriction in lifting and carrying equates to an inability to lift and carry up to ten pounds, particularly where, as

here, the record contains little evidence to support such an extreme interpretation.

Regarding Dr. Magurno's finding of marked limitations in neck extension, the ALJ

explicitly indicated he rejected this portion of the opinion because it was based on

findings that did not appear to stem from an ongoing, medically determinable severe

impairment.  (T. 32.)  The ALJ's rejection of this limitation is supported by substantial

evidence because Plaintiff reported to Dr. Magurno that his neck and trapezius pain

displayed on the exam were the result of a fight and not an ongoing medical

impairment, and because no other treatment evidence shows any further mention of

neck and trapezius pain or other related symptoms.  (*Id.* at 324-25.)  In determining that

Plaintiff remained able to perform sedentary work, the ALJ considered all the evidence

and provided sufficient explanation to allow for judicial review, and this Court finds his

conclusions are supported by substantial evidence.  Consequently, remand solely for

the purpose of making the ALJ provide an explicit function-by-function analysis would

serve no useful purpose and is therefore not required.  *Cichocki*, 729 F.3d at 176-77.


### E.  Step Five Finding

Although the claimant has the general burden to prove, at steps one through four

of the sequential evaluation, that he has a disability under the definitions of the Social

Security Act, the burden shifts to the Commissioner at step five "'to show there is other

work that [the claimant] can perform.'"  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir.

2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  At step

five, the ALJ must determine "whether there are significant numbers of jobs in the

national economy that the claimant can perform given the claimant's residual functional

capacity, age, education, and work experience." *McIntyre*, 758 F.3d at 150 (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). Where the ALJ relies on the testimony of a vocational expert to support the step five finding, the hypothetical question posed to the vocational expert must "include all of a claimant's impairments, limitations and restrictions" in order for the testimony elicited in response to that question to constitute substantial evidence to support the conclusion of no disability. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211-12 (N.D.N.Y. 2009) (citing *Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

As to Plaintiff's arguments that the hypothetical question was incomplete because of the ALJ's failure to account for the extent of limitations supported by the evidence, those arguments have already been addressed and rejected above. (Dpl. Mem. of Law at 21-22) This Court finds that the ALJ's RFC and other conclusions were supported by substantial evidence and there was therefore no need for the ALJ to include greater restrictions in either the RFC assessment or the hypothetical questions to the vocational expert.

Regarding Plaintiff's argument that the vocational expert's testimony did not meet the Commissioner's burden at step five because she did not provide numbers for the identified jobs in the regional economy, there is no legal requirement for the ALJ to provide such evidence. Rather, the regulations and applicable legal standards only require a showing that there is a substantial number of jobs in the national economy that Plaintiff remains able to perform. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *7-8 (N.D.N.Y. Mar. 22, 2004) (noting that whether or not a significant number of jobs existed in the regional economy was irrelevant where the ALJ

had relied on vocational expert testimony establishing a significant number of the same job in the national economy); *see also* 20 C.F.R. § 416.966(a) (noting that the Agency deems work to exist in the national economy when it exists either in the region where the claimant lives or in several other regions of the country). Because the vocational expert provided national numbers, the ALJ was entitled to rely on her testimony when determining that Plaintiff remained able to perform a substantial number of jobs at Step Five.

For all these reasons, the Step Five finding is supported by substantial evidence and consistent with applicable legal standards, and remand is not required on this basis.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: August 15, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge